AO 106 (Rev. 04/10) Application for a Search Warrant (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT
for the
Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. M-22-98 -STE
DEOXYRIBONUCLEIC ACID (DNA) IN THE POSSESSION )
OF GEORGE MCENTIRE SMITH, NATIVE AMERICAN )
MALE, DOB: XX-XX-2000 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1111(a) | Homicide in Indian Country |
| 18 U.S.C. § 1151 | |
| 18 U.S.C. § 1153 | |

The application is based on these facts:

See attached Affidavit of Special Agent Melissa I. Gaud, Federal Bureau of Investigation, which is incorporated by reference herein.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Melissa I. Gaud, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Feb 15, 2022**

City and state: Lawton, OK ▓▓▓▓▓▓▓▓▓▓▓▓

*Judge's signature*

Shon T. Erwin, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Melissa I. Gaud, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I am a Special Agent of the Federal Bureau of Investigation ("FBI"). I have been employed by the FBI since September 2018. I have a Bachelor of Science degree in Medical Laboratory Sciences from Rutgers University in Partnership with the University of Medicine and Dentistry of New Jersey, and a Master of Science degree in Forensic Science from John Jay College of Criminal Justice where I specialized in Criminalistics and Molecular Biology. Before becoming a Special Agent, I was a Medical Laboratory Scientist in a hospital setting for approximately 8 years. I am currently certified as a Medical Laboratory Scientist by the American Society of Clinical Pathologists (ASCP). Since February 2019, I have worked in the FBI New Haven Division's complex financial crimes squad. In my capacity as a Special Agent, I have handled investigations involving health care fraud, corporate securities, and commodities fraud. I am currently assigned to the FBI Oklahoma Division-Muskogee RA where I have investigated criminal violations related to Indian Country crimes, as explained in Title 18, United States Code (U.S.C.), Section 1151 and as it pertains to the Major Crimes Act (MCA).

2. I submit this Affidavit, pursuant to Fed. R. Crim. P. 41, in support of an application authorizing the collection of a Deoxyribonucleic Acid ("DNA") sample from GEORGE MCENTIRE SMITH, an Indian, by collecting oral (buccal) swab samples according to the standard practices and procedures employed by the FBI for DNA testing. The request is made in relation to an ongoing investigation involving a violation of Title 18, United States Code, Sections 1111(a), 1151, and 1153.

3. The facts in this affidavit come from my involvement in an investigation being handled primarily by the FBI and Wagoner Police Department. This affidavit is intended to show that there is probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

4. On or about April 08, 2021, L.A, the wife of JIMMY ARTHUR (hereinafter referred to as ARTHUR), called 911 at 10:04PM local time to report that her husband had been shot, was bleeding, and not breathing. When officers arrived at 1201 Southeast 7th Street, Wagoner, Oklahoma 74467, GEORGE MCENTIRE SMITH exited the residence, distraught and sweating. When officers entered the residence, they located ARTHUR unresponsive, laying in the front room of the house, on his back, with what appeared to be two gunshot wounds to the back of the head. ARTHUR was laying on a light-colored painter's drop cloth. Emergency medical services personnel arrived on scene and pronounced ARTHUR dead at 10:21PM local time.

5. The location of the scene is within the boundaries of the Muscogee (Creek) Nation Reservation and SMITH was identified as a member of the Cherokee Nation, a federally recognized tribe. FBI agents from the FBI Muskogee Resident Agency subsequently arrived on scene and, in conjunction with the Wagoner Police Department, conducted a consent search of the house in which ARTHUR was killed.

6. During the search of the scene, FBI agents and Wagoner Police officers located a .25 caliber spent bullet casing on a chair in the kitchen. However, no .25 caliber firearm was recovered. Blood splatter on the floor, ceiling, and refrigerator in the kitchen indicated that ARTHUR had been shot in the kitchen and then moved to the front room. Officers also collected clothing worn by SMITH at the scene, including gray sweat pants with suspected blood.

7. SMITH was interviewed both on scene and at the Wagner Police Department on April 09, 2021. SMITH stated that he had spent the day with ARTHUR and they had gone to a pawn shop to sell a 10mm rifle. SMITH denied possessing any other firearms. SMITH stated that as he and ARTHUR were preparing to play cards on the dining room table, suddenly and without warning, an unidentified individual wearing all black, including a black ski mask, entered the house and shot ARTHUR from the vicinity of the front doorway. SMITH stated that it happened in front of him. SMITH later stated the build of the individual was similar to that of his brother, and that SMITH's brother could have committed the crime. SMITH stated that before calling 911, he moved ARTHUR's body to the painter's drop cloth and moved the body from the kitchen/dining room to the front room in an attempt to prevent L.A. from seeing her dead husband and getting upset.

8. On April 09, 2021, FBI Special Agent Malia Gil de Rubio received a call from Dr. Jeremy Shelton of the State of Oklahoma Office of the Chief Medical Examiner (Eastern Office). Dr. Shelton advised that he had conducted an autopsy of ARTHUR and determined that the cause of death was gunshot wounds to the head. Dr. Shelton reported that two bullets were removed from ARTHUR's head and described them as "jacketed small caliber," either .22 caliber or .25 caliber. Dr. Shelton advised that the bullets were likely .25 caliber because he had not seen many jacketed .22 caliber rounds. Dr. Shelton reported that the rounds were fired from an "intermediate range" meaning beyond one foot, but no more than three to four feet. There were no other signs of trauma to the body. Subsequent ballistics analysis of the projectiles recovered from ARTHUR's head indicates that they are most consistent as being .25-caliber.

9. Investigators followed up on local pawnshops to verify what SMITH and ARTHUR had been doing prior to the shooting. Investigators learned that in addition to the 10mm rifle

SMITH had stated he tried to sell, SMITH also unsuccessfully attempted to a pawn a .25-caliber handgun at the same time. This directly contradicted SMITH's statement on the night of the shooting that he did not have access or possession or any other firearms.

10. Based upon evidence missing from the scene and inconsistencies between SMITH's narrative and the physical evidence, investigators suspect that SMITH may have left the scene and went to his home across the street or another nearby location to conceal or dispose of evidence before law enforcement was called and arrived at the scene. As a result, investigators executed a search warrant at SMITH's residence and found a pair of jeans with suspected blood.

11. The sweatpants seized from SMITH's person the night of the shooting and the jeans found in SMITH's residence were submitted to an OSBI crime lab for forensic examination. The lab confirmed there was blood present on both the pants and the blue jeans. The lab determined that the DNA on the grey pants was a mixture from at least two individuals, of which ARTHUR could not be excluded as being a contributor. The blood stain on the jeans did not match ARTHUR.

12. In an effort to determine if SMITH was a contributor to the mixture, a known DNA sample must be taken from SMITH's person and compared to the mixture identified on the grey pants and jeans, respectively.

13. Attachment A includes a photo of GEORGE MCENTIRE SMITH. SMITH is a Native American male with a date of birth of 4/23/2000, approximately 6'5" tall, weighs approximately 300 pounds, and has blue eyes and brown hair.

14. SMITH is currently incarcerated at Cimarron Correctional Facility located at 3200 S. King Hwy, Cushing, Oklahoma, 74023.

## **CONCLUSION**

15. Based upon the foregoing, there is probable cause to believe that SMITH was involved with the offense of homicide in Indian Country and that DNA evidence of SMITH would provide comparative evidence to further the investigation. This collection will allow for a comparison to determine if, in fact, the seized DNA evidence of SMITH is on the evidentiary items seized during the course of this investigation. I therefore request an order to obtain buccal swabs (as described in Attachment B), of the interior cheek area of the mouth of SMITH (as described in Attachment A).

16. Based upon my experience and training as well as consultation with other law enforcement officials, I am aware of instances where subjects have physically resisted the collection of DNA samples from their person. For this reason, I request that this warrant authorize reasonable force be used, if necessary, to collect the DNA buccal swabs from SMITH should he resist.

17. In taking the reference samples from SMITH, I anticipate the following procedures will be employed:

   a. Law enforcement agents will approach SMITH, present him with the search warrant, and request that he submit to the procedure described below. If he does not submit, only that force which is deemed reasonable and necessary will be employed to obtain the reference samples.

   b. To obtain buccal (inner cheek scraping) cell samples, cotton swabs will be placed inside of SMITH's mouth and rubbed against the inside of his cheeks to scrape cells containing DNA onto the tips of the swabs. This is the least intrusive, medically accepted method of obtaining a DNA reference sample.

18. In the event SMITH refuses to voluntarily submit to the collection of the buccal cell samples (as described above), he will be physically restrained, and buccal swabs will be extracted by law enforcement agents and/or medical personnel.

19. Wherefore, I respectfully request that this Court issue a search warrant for the body of SMITH as described in Attachment A and authorize the search and seizure of the items in Attachment B.

Respectfully Submitted,

_____
Melissa I. Gaud, Special Agent
Federal Bureau of Investigation

Sworn before me on **Feb 15, 2022**

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE
WESTERN DISTRICT OF OKLAHOMA

## ATTACHMENT A

## DESCRIPTION OF THE PERSON TO BE SEARCHED

## GEORGE MCENTIRE SMITH

SMITH is a Native American male, born on 4/23/2000, approximately 6'5" tall, weighing approximately 300 pounds.



*Photograph of GEORGE SMITH*

## ATTACHMENT B

## EVIDENCE TO BE SEIZED

DNA samples from GEORGE MCENTIRE SMITH in the form of buccal cells on oral swabs. The oral swabs will be collected from the inside cheek portion of the mouth to sufficiently collect buccal cells pursuant to the standard practices and procedures employed by the FBI for DNA testing. Collectors will utilize whatever force is reasonably necessary and medically acceptable to secure the requisite samples and to take photos of SMITH during the process wherein the swabs are taken from SMITH's mouth. The samples secured from SMITH will be used for comparison against other evidence collected during the instant investigation.